UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
STEPHEN F. CASS,                                    )
     Plaintiff,                                   )
                                                    )
VS.                                                 ) C.A. No. 1:21-cv-10966-PBS
                                                    )
ROBERT IRVING, PATRICK SWANICK,                     )
SHANE BOWLES, LEISHA SIMON, REID LYONS,             )
and ELLEN GRIECO,                                   )
     Defendants.                                  )
_____

## <u>MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS</u>

Pursuant to Fed. R. Civ. 12(b)(6), the Defendants hereby submit the following

Memorandum of Law in support of their Motion to Dismiss Plaintiff's First Amended Complaint

(the "Complaint").

## I.     PRELIMINARY STATEMENT

In this action, Stephen Cass ("Cass") impermissibly seeks to relitigate claims that are

barred by a Settlement Agreement that Cass executed in December, 2019, after he settled a

federal civil  rights lawsuit against the Town of Wayland and six other defendants, which lawsuit

contained virtually the same claims that Cass seeks to prosecute in this action.  *See* Defendants'

Motion To Dismiss,  Exhibit A, Executed General Release & Confidential Settlement Agreement

(redacted in part) (hereinafter "Settlement Agreement").[1]   In fact, this is Mr. Cass's fifth lawsuit against a Town employee after settling that matter in December, 2019, having previously sued a line technician of the Wayland High School IT  Department for defamation and invasion of privacy, having unsuccessfully pursued criminal charges against the retired Chief of the Wayland Police, and filing two lawsuits at the same time this action was filed.   In addition to being barred by and under the Release, this action should be dismissed for the following reasons among others: (i) it is barred by principles of *res judicata*; (ii) barred under the applicable statute of limitations; (iii) barred by the exclusivity provision of the MA. Whistleblower Act; and, (iv) barred by the salient provisions of the Massachusetts Tort Claims Act.  The instant lawsuit represents a continued campaign of harassment by Mr. Cass against his former  co-workers and supervisors, who plaintiff has released from suit and liability.   Mr. Cass's conduct should not be countenanced by the Court; the Defendants submit that his Complaint should be dismissed in its entirety.

## II.      FACTUAL BACKGROUND

Stephen Cass ("Cass") served as the Wayland High School ("WHS") Athletic Director and Health & Wellness Director for two years, from the Summer, 2013 – Spring, 2015.  See

---

[1] A true and accurate copy of a General Release & Confidential Settlement Agreement executed by Mr. Cass and dated December 2, 2019 is attached to defendant's Motion to Dismiss as Exhibit A. Where "plaintiff had notice of these documents and relied on them in framing the complaint, the attachment of such documents to a motion to dismiss does not convert the motion to one for summary judgment, as required by Mass. R. Civ. P. 12(b)(6)." *Marram v. Kobrick Offshore Fund, Ltd*., 442 Mass. 43, 45 n. 4 (2004). Notably, plaintiff previously filed a copy of this document as an exhibit to a pleading in a matter currently pending in Suffolk Superior Court, *Torres Scammon Hincks & Day LLP vs. Stephen F. Cass*, Suffolk Superior Court, C.A. No. 20184CV00941. In that case, plaintiff brought counter-claims against his former attorneys over the disbursement of these settlement funds and annexed the General Release & Confidential Settlement Agreement to his pleading. See id., Docket No. 9 (Plaintiff's First Amended Counterclaim, filed August 27, 2020, Ex. F). The Court "may take judicial notice of the docket entries and papers filed in separate cases." *Home Depot v. Kardas*, 81 Mass. App. Ct. 27, 28 (2011).  See also *Watterson v. Page*, 987 F. 2d 1, 3 (1st Cir. 1993)(noting that the First Circuit has long recognized "exceptions for documents the authenticity of which are not disputed by the parties; for official public records; or for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.").

Complaint, ¶ 19.  While the Complaint is silent on this point, it is undisputed that Cass had two

one-year contracts which did not automatically renew year-to-year.   During Cass's first year,

John Ritchie was interim Principal of WHS; during his second year, Allyson Mizoguchi, served

as the Principal of WHS, a position she still holds today.   During his two years at WHS, Cass

maintains that he uncovered a host of financial and other issues in the Athletic Department, of

which he informed his superiors, but "none were willing to support Cass in resolving the

problems or confront the coaches involved." *Id*., ¶¶ 22-24.   Despite his accomplishments, Cass

was informed in May, 2015 (by Principal Mizoguchi) that his contract was not going to be

renewed for the following school year. *Id*., ¶ 26.  Mr. Cass "took his complaints to the Wayland

School Committee,  which resulted in his employment situation becoming public, something

Cass claims he tried to avoid. *Id*., ¶ 27.[2] Even after his contract ended, Cass spoke publicly "at

numerous WSC meetings in the summer and fall, 2015 imploring WSC members to investigate

his claims and to provide examples of the problems he uncovered." *Id*., ¶ 29.  For his efforts,

Cass alleges that he was harassed by Wayland residents, football players' parents, and became a

pariah in the community. Id., ¶ 33.   In what Cass claims was a "final act" of retaliation, on

January 16, 2020, Cass emailed Chief Patrick Swanick (Robert Irving's successor), that he

intended to speak at the Wayland School Committee meeting the next day.  Upon Cass's arrival,

he encountered WPD Officer Chris Cohen, one of the officers who participated in Cass's arrest

in the Fall, 2105.  "Rather than risk being falsely arrested, Cass left immediately and chose not to

speak" at the WSC meeting. *Id*., ¶80.  Notably, Cass does not allege that anyone from the

Wayland School Committee or anyone else threatened to have Cass arrested if he spoke at the

---

[2] It should be noted that the Wayland School Committee does not have statutory authority to hire the Athletic Director.  Its hiring authority is limited to the Superintendent and a few other specific positions. *See*, e.g., M.G.L. c. 71, § 37 (providing for hiring superintendent).

WSC meeting nor does Cass allege that he had an exchange of words with Officer Cohen or any other member of the WPD.  The Defendants now turn to the events which undergird this Action, all of which were litigated and disposed of by Judge Patti Saris in the previous federal civil rights action.

On the morning of October 26, 2015, WPD Officers Shane Bowles and Jamie Berger met with two WPS IT employees and Asst. Superintendent, Brad Crozier, to discuss the situation of the missing School computer that had been issued to Cass.  Cass alleges that they failed to obtain certain critical information about this computer.  *Id*., ¶52.[3] Later that day, Cass was arrested for not returning a School-issued computer which he (Cass) believed, based on a comment from someone in the IT Department, he was told he could keep.  *Id*., ¶¶44-48 & 52. The Search Warrant for this item was issued out of the Framingham District Court based on an Affidavit filed by Detective Jamie Berger.  *Id*., ¶54.[4]  Although Cass contends that it was Chief Irving's decision to charge Cass with a crime, Cass does not allege that Chief Irving filed an Affidavit in support of the Search Warrant (which he did not) or that he reviewed and signed off on Jamie Berger's Affidavit (which he did not); moreover, a criminal complaint can only be issued by a justice or clerk of the district or a grand jury.  *See* M.G.L. c. 218, § 35 (district court) and M.G.L. c. 212, §§ 6-7, and only the District Attorney can prosecute someone for a crime. *See, e.g., Manning v. Mun. Ct. of the Roxbury Dist*., 372 Mass. 315, 317-318 (1977) (private citizen has no

---

[3] This represents the entirety of Cass's claim against Officer Bowles.  Cass does not allege, for example, that Officer Bowles knowingly filed a false affidavit with the Framingham District Court, otherwise engaged in any kind of perjurious conduct or covered-up any exculpatory evidence that would have benefited Cass's defense.  Even if he was negligent in this investigation, Officer Bowles failure to obtain certain information about the missing computer does not give rise to a Section 1983 claim against him.  *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989) (notwithstanding prior reports of abuse, county social services agency's failure to protect child from abusive father held not actionable under Section 1983).

[4] The Magistrate Clerk who issued the Search Warrant had the authority not to do so if he believed there was insufficient evidence to warrant it.  M.G.L.c. 276, §38.  Under Massachusetts law, the issuance of a criminal complaint can only be made upon a finding of probable cause.  Mass. Law of Criminal Procedure, §3(g).

"judicially cognizable interest in the prosecution or non-prosecution of another").   As for IT Director Leisha Simon, the only allegation against her is that she obtained an inflated value of the computer from a company called Wave Ave. Group Insurance.  *Id*., ¶69.  Similarly tenuous is the claim against Human Resources Director, Reid Lyons, whose "false" statements to Asst. Superintendent Brad Crozier somehow "contributed to Cass' arrest" notwithstanding what Cass characterizes as the "incredible confusion surrounding Cass' departure" toward the end of June, 2015. Id., ¶¶70-71.

The allegations against the Chair of the Wayland School Committee, Ellen Grieco, are even more attenuated.  Cass claims that during a School Committee meeting on November 30, 2015,  one member of the WSC requested that the charges against Cass be dropped.  "The notes of WSC Barb Fletcher state 'DB moved to contact DA and drop charges—no second.'"  *Id*., ¶111.  So, not only was there "no second," but also the decision whether to continue with a criminal prosecution lies with the District Attorney's Office, not the Wayland School Committee.  The criminal trial ended with a directed verdict by Judge Jennifer Stark at the conclusion of the prosecution's case.  Id., ¶65.[5]

As stated above, these and other related events led Cass to file a multi-count lawsuit in 2017 against the Town of Wayland, the WPS, WPD, and four Town and/or school employees (not including the Defendants named herein). In Cass's 2017 lawsuit, he brought various claims

---

[5] According to Cass, following his arrest, WPD did background checks on Cass and conducted "a thorough but illegal search of his school-owned computers including Cass's personal Yahoo! Accounts."  *Id*., ¶67.  Any such search on a school-issued computer was not "illegal" and this search does not give rise to any civil liability here. *See, e.g., Commonwealth v. LeBlanc*, 76 Mass. App. Ct. 1104 (2009) (quoting Commonwealth v. Bryant, 447 Mass. 494, 497 (2006) ("Employees have no reasonable expectation of privacy in files on a company computer that are 'freely accessible to others in the [company], including the owners and secretaries.'")). Cf. *United States v. Zeigler*, 474 F.3d 1184, 1191 (9th Cir.2007) (private employer may consent to search of hard drive of workplace computer that remains in control of employer even where employee placed personal files in it). Moreover, as the United States Supreme Court recently ruled, the Computer Fraud and Abuse Act of 1986 does not prohibit a police officer from obtaining information that is otherwise available to them even if they have an improper motive to do so. *See Van Buren v. United States*, 593 U.S. --, slip op. at 1 (June 3, 2021).

against the Town of Wayland and Wayland School Department arising out of the Town's non-renewal of his contract.  Cass alleged, as he does in this lawsuit, that his non-renewal was in "retaliation" for his engaging in certain "whistle blowing" activities concerning Title IX and other related concerns involving the Wayland High School Athletic Department.  Mr. Cass also alleged his arrest and prosecution violated his civil rights and the publication of his booking photograph was defamatory.    In the federal civil right case, Cass brought seven claims against the defendants: Title IX, 20 U.S.C. § 1681 (Count I); a violation of the Massachusetts Whistleblower Act, M.G.L. c. 149, § 185(f) (Count II); malicious prosecution (Count III); intentional infliction of emotional distress (Count IV); 42 U.S.C. § 1983 and M.G.L. c. 12, § 11H (Count V); defamation (Count VI); and intentional interference with contractual relations (Count VII).  On May 30, 2019, the U.S. District Court (Saris, C.J.) granted defendants' summary judgment (in part), dismissing Counts III, IV, V, and VI.  Count VII was voluntarily withdrawn by Cass during trial. *See* Judgment in a Civil Case, *Cass v. Wayland*, 1:17-CV-11441-PBS, U.S. District Court, Doc. No. 174 (August 2, 2019).[6]

At trial, plaintiff lost on his Title IX retaliation claim (Count I) and prevailed on his whistleblower claim (Count II) against the Town of Wayland.  The parties filed post-verdict motions, and Cass sought reinstatement to his position as Athletic Director pursuant to M.G.L. c. 149, § 185(d), submitting his own Affidavit directly to Chief Judge Patti Saris.  See Motion to Dismiss, Letter and Affidavit, Exhibit C.  In a hearing addressing the parties' post-verdict Motions held on or about October 18, 2019, Chief Judge Saris declined to order Cass reinstated, stating she would not order his reinstatement under any circumstances.  Among other reasons for

---

[6] Among other things, the Court (Saris, C.J.) found that the WPD did have probable cause to arrest Cass based on their belief that he failed to return School owned property. The Court's probable cause finding is exactly the opposite of Cass's claim to the contrary, Complaint,  ¶ 144, and is reason alone to dismiss his claim for False Imprisonment (Count IX).

her decision, Judge Saris cited the level of acrimony between the parties and the fact that WPS had a contract with another Athletic Director who, by that time, had been in the role for several years.

While various post-verdict Motions were still pending, Cass and the Town of Wayland entered into a Settlement Agreement (which Mr. Cass executed on December 2, 2019). *See* Motion to Dismiss, Ex. A.  In exchange for the payment of a substantial six-figure settlement, Cass agreed to release "the Town of Wayland, Wayland Public Schools, Wayland Police Department […] and its respective officials, officers, directors, principals, members, shareholders, agents, servants, employees, representatives, parent companies, subsidiaries, affiliates, insurers and attorneys, both past and present (hereinafter the "Releasees") […] from any and all claims […] or under any other local, state or federal law, regulation, ordinance or bylaw […] or pursuant to any common law theory of tort or contract." Motion To Dismiss, Ex. A, pp. 1-2. Mr. Cass released the Town of Wayland and its employees, past and present, from any claims that were asserted in the 2017 lawsuit, or could have been. *Id.*, p. 1.

It is a "general release of all claims." *Id*. Therefore, in addition to the actual claims asserted against the defendants in the federal civil rights case, Mr. Cass agreed to release any claim "arising out of, related to, or connected in any way to any disparate treatment, harassment, and/or retaliation allegedly suffered or experienced by [Mr. Cass]," as well as "any and all claims for negligence, gross negligence, intentional interference with contract, negligent infliction of emotional distress, intentional infliction of emotional distress, deprivation or violation of any civil, constitutional, or statutory rights, or under any other local, state or federal law, regulation, ordinance or bylaw […] or pursuant to any common law theory of tort or contract." MTD, Ex. A, pp. 1-2 (emphasis added). Mr. Cass acknowledged that he was "giving

up any right or rights to seek further monies or relief from, or otherwise assert any claims or demands against any of the Releasees, their heirs, executors, administrators, successors and assigns." *Id.*, p. 2. The Defendants submit that the Settlement Agreement unambiguously encompasses the tort claims in this lawsuit against several Town and School Department elected officials and employees.

Nonetheless, Cass has now filed suit against a number of former and present Town and School Officials, as well as their outside legal counsel, Gini Tate. The Complaint largely rehashes and/or reframes Cass's allegations from his 2017 lawsuit against the Town of Wayland and the several administrators who Cass alleged retaliated against him for his complaints regarding claimed violations of Title IX and other whistle blowing activity. The Defendants need not go into chapter and verse. With the exception of Cass's one aborted appearance before the Wayland School Committee, *Id.*, ¶80, by his admission, Cass knew about these events and received "previously private documents from Wayland" in February, 2018, at a time when discovery was still pending in federal civil rights action. *Id.*, ¶¶14 & 17. Cass claims he received more documents from the Town on September 11, 2020, "which forms the basis of parts of his complaint" and he "could not have brought legal action against Defendants Irving, Swanick, and Bowles without those documents." *Id.*, ¶18. The Defendants are at a loss to figure out which "parts of the Complaint" to which Cass refers. Suffice to say, however, that with the exception of Chief Swanick, Cass has been aware of their involvement in his arrest and prosecution since the Fall, 2015. *Id.*, ¶¶ 46-54. As for Chief Swanick, Cass faults him for not

investigating certain Wayland residents (some of whom Cass is suing separately in Barnstable

Superior Court), for their "criminal harassment" of Cass.  *Id.*, ¶77.[7]

### III.   ARGUMENT

### 1.   Standard of Review.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 129 S. Ct. 1937, 1949, (2009).  "Where a complaint pleads facts that are "merely

consistent' with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. at 557).

While detailed factual allegations are not required, mere labels and conclusions are not enough.

The Supreme Judicial Court has adopted the same standard.   In *Iannacchino v. Ford Motor Co.,*

452 Mass. 623 (2008), the SJC explained that "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Id.,* 452 Mass. at 636 (*quoting Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555-56 (2007)).

> What is required at the pleading stage are factual "allegations plausibly
> suggesting (not merely consistent with)" an entitlement to relief, in order to
> "reflect[ ] the threshold requirement of [Fed. R. Civ. P.] 8(a)(2) that the 'plain
> statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"

> *Iannacchino*, *supra*, 452 Mass. at 636 (*quoting Bell Atl.*, 550 U.S. at 557).

---

[7] A private citizen has no right to compel a police department to conduct an investigation.  *See, e.g., Williams v. City of Boston*, 771 F. Supp. 2d 190, 200 (D. Mass. 2011) ("The failure of police officers to conduct an adequate investigation is not sufficient to state a civil rights claim under Section 1983 'unless there was another recognized constitutional right involved.'") (quoting *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985)). Indeed, the Court of Appeals for the First Circuit has summarily rejected a due process claim "based on the assumption that appellant has the constitutional right (1) to have the defendants conduct an investigation …, and (2) to have the defendants arrest the person or persons responsible."  *Veale v. Penuche's Ale House*, 215 F.3d 1313 (1st Cir. 2000) (table case).

2.    **Plaintiff's Claims Are Barred By The General Release And Settlement Agreement**.

The Town of Wayland paid substantial six figures for a complete release of all claims Cass had against the Town of Wayland, and its employees, agents or servants, which in any way arose out of Cass's 2015 non-renewal, as well as any claims that could have been brought in Cass's 2017 lawsuit. A general release of all claims "is to be given effect, even if the parties did not have in mind all the wrongs which existed at the time of the release." *Schuster v. Baskin*, 354 Mass. 137, 140 (1968); see also *Leblanc v. Friedman*, 438 Mass. 592, 598 (2003). "If exceptions were intended to the scope of the release[], they should have been stated." *Schuster supra*, 354 Mass. at 140 (emphasis added). General releases dispose "of all claims and demands arising out of any transactions between" the parties. *Leblanc, supra*, 438 Mass. at 598. "As is often the case, a release may be prompted by the settlement of a specific dispute or resolution of a specific issue, but broad wording in the release operates to settle all other, unrelated matters, even if they were not specifically in the parties' minds at the time the release was executed." *Eck v. Godbout*, 444 Mass. 724, 728 (2005); *Naukeag Inn, Inc. v. Rideout*, 351 Mass. 353, 356 (1966); *Radovsky v. Wexler*, 273 Mass. 254, 257 (1930); *Atlas Tack Corp. v. Crosby*, 41 Mass. App. Ct. 429, 433 (1996)). The fact that a release identifies specific matter that prompts the parties to execute a release "does not, by itself, operate to restrict the scope of a release that contains broad language releasing all claims of whatever nature the party executing the release may have against the party to whom the release is given." *Id*.

By its plain terms, the Settlement Agreement Cass executed on December 2, 2019, is a general release of all claims he had or has against the Town of Wayland, and its employees, which in any way related to the claims or allegations raised in the 2017 lawsuit, whether asserted or unasserted, and pursuant to any statute, common law theory, tort or contract. See Motion to

10

Dismiss, Ex. A. The Defendants anticipate that Cass will argue, as he previously did in *Cass v. Saviatto* and *Cass v. Ritchie*, that because the Settlement Agreement identifies the Releasees as the Town of Wayland, Wayland Public Schools, Wayland Police Department, [individual defendants and insurers]" but then uses the singular pronoun "its respective officials, […] agents, servants, [and] employees . . ." as opposed to the collective pronoun "their respective officials, […] agents, servants, [and] employees . . .," there was no release of the claims in this lawsuit.[8]  If this twisted logic is difficult to follow, it is because the argument is baseless. The Settlement Agreement explicitly releases claims against the respective employees of the named Releasees. *Id*. There is no carve-out or explicit exception for any claim. *Id*.  Mr. Cass's allegations with respect to the Defendants named here closely relate to the allegations previously litigated in the 2017 litigation and could have been pled in that litigation, but were not.  There is a close commonality of claims and facts, between this action and the prior civil rights action, which was litigated through Trial. These claims are a mere extension of the claims brought in the 2017 litigation, several of which were dismissed at summary judgment and two of which proceeded to Trial, after which the entire action was settled. As such, they are barred by the Settlement Agreement, and dismissal of the Complaint in its entirety is proper.

      **3.**      **The Complaint Is Barred By Principles Of *Res Judicata*.**

Cass's claims here are precluded whether considered under the doctrine of res judicata or a form of claim preclusion.[9]  Three conditions are required to invoke *res judicata*—all of which are met here: (1) there is "sufficient identicality between the causes of action asserted in the

---

[8] On January 28, 2021, the Orleans District Court dismissed Cass's Complaint on this ground.   See Motion to Dismiss, Ex. C.  Mr. Cass has filed an appeal which is still pending.

[9] As the First Circuit has observed, ". . .the proper test for the applicability of res judicata is not whether the plaintiff in fact argued his constitutional claims in the state proceeding, but whether he could have."  *Lovely v. Laliberte*, 498 F. 2d 1261, 1263 (1st Cir. 1974).

earlier and later suits": (2) sufficient identicality between the parties in the two suits; and (3) a final judgment on the merits must have been entered in the previous action."  *Arovonitz v. Fafard*, 78 Mass. App. Ct. 1, 7 (2010)(*res judicata* is "most important is assuring that judgments are conclusive, thus avoiding relitigating of issues that were or could have been raised in the original action . . .) and *Montana v. United States*, 440 U.S. 147, 162 (1979)(same); *see also, Coughlin v. Town of Arlington*, 2011 WL 6370932, at *5 (D. Mass. Dec. 19, 2011)(discussing claim preclusion).  "The modern view, which prevails in Massachusetts, is that a party should be held to account not only for what he actually pleaded, but for what he could have pleaded in the earlier suit.  In re *Sonius Networks, Inc.*. 499 F.3d 47, 61 (1st Cir. 2007).  Furthermore, "a person who was not named a party in a prior action . . . (may) raise the defense of claim preclusion in a subsequent suit involving sufficiently related subject matter . . . The person who was not a party in an earlier action may raise preclusion in a subsequent action if the claimants in that action have a close and significant relationship with the original claimants" or when "the party against whom claim preclusion is asserted had a full and fair opportunity to for judicial resolution of the same issue in the earlier action."  *Mancuso v. Kinchla*, 60 Mass. App. Ct. 558, 568 (2004) (citations omitted).  A comparison of Cass's federal civil rights action with the two actions filed in Superior Court (and removed to this Court), shows that the first two elements have been established, as a significant number of the Town and School Officials could have been named in the prior action, and the Complaints reference the same universe of events surrounding Cass's non-renewal as the Athletic Director in June, 2015, and arrest in October, 2015.  Moreover, the filing of a voluntary stipulation of dismissal with prejudice in the prior action qualifies as a final judgment on the merits for purposes of *res judicata*.  *Coughlin, supra*, at *7 (citing cases); *see also, Jose Tous, Inc. v. Continental Supplies, Inc.*, 34 F.3d 1065 (1st Cir.

1994)(unpublished)(dismissal with prejudice under Rule 41(a)(1)(B) operates as an adjudication on the merits).

A close comparison of Cass's federal civil rights action and this action is not warranted. They both stem from the same core operative events, namely Cass's non-renewal as the WHS Athletic Director and his months-later arrest by the Wayland Police Department.  The fact that none of these Defendants were named in the prior lawsuit is largely irrelevant for purposes of *res judicata*.  As Cass admits, he received various documents from the Town in February, 2018, while discovery in the prior civil rights action was still open.  At the time, Cass was represented by counsel and he could have filed a Motion to Amend his Complaint to add the same Town or School Officials he has named in this Action.  Instead, Cass prosecuted his federal civil rights claim to verdict; eventually settled that case including signing a General Release & Settlement Agreement; and has now brought five separate actions against a host of Town of Wayland and School Department officials based on substantially the same events which gave rise to his original federal civil rights lawsuit.  This is wholly improper and Cass's Complaint should be dismissed in its entirety.

    4.    **All Of Plaintiff's Claims Are Barred By The Statute Of Limitations.**

Cass's federal and state civil rights claims both have a three-year statue of limitations. M.G.L. c. 260, §§ 2A & 5.  Likewise, so do all of Cass's common law claims (Counts 1-IX). See M.G.L. c. 260, § 2A ("actions of tort […] shall be commenced only within three years next after the cause of action accrues.")   A cause of action accrues when the plaintiff "learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." *White v. Peabody Constr. Co*., 386 Mass. 121,129 (1982).  Mr. Cass's claims for malicious prosecution, abuse of process and false imprisonment, all accrued no later than the date the Framingham

District Court directed a verdict in his favor (March, 2016).  This action was not file until February 26, 2021, and, hence, these particular claims are time-barred.   The same holds true for Cass's claims of intentional and negligent infliction of emotional distress which, by and large, are based upon his arrest and prosecution.  Complaint, Counts VII & VIII.   Moreover, as it pertains to Cass's IIED claim against Chief Swanick and Ellen Grieco, Complaint, ¶¶ 123-125, their conduct comes nowhere to the level that might be deemed outrageous or "beyond all bounds of decency" as limned by the SJC.  *See, e.g., Howell v. Enterprise  Publishing  Co*. v. 455 Mass. 641, 672 (2010).   Chief Swanick allegedly failed to pursue the complaints that Cass filed against WPD members and football parents who were harassing him; Ellen Grieco somehow "continued the bogus prosecution of Cass."  Even assuming arguendo the truth of these allegations, they do not make out an IIED claim.

5.     **Plaintiff's Claims Are Barred By The Exclusivity Provision Of The MA Whistleblower Act**.

Before the School Officials address Cass's individual common law claims, they pause to note that one of the claims Cass pursued in the federal civil rights case was a whistleblower claim under the MA. Whistleblower Act, M.G.L. c. 149, §185.  In relevant part, Section 185(f) provides that the institution of an action under the Act "shall be deemed a *waiver* by the plaintiff of the rights and remedies available to him, for the actions of  his employer, under any other contract, collective bargaining agreement, state law, rule or regulation, or under the common law."  M.G.L. c. 149, §185(f).  Significantly, courts have consistently held that the waiver provision of §185(f) bars all common law claims, including a claim for wrongful termination against individual supervisors, arising out of the same conduct as alleged in the Whistleblower Statute claim. *See Fitzgerald v. Commonwealth*, 32 Mass. l. Rprt. 481 (2015, 2015 WL 924984 at *2 (citing cases); *Gauthier v. Town of Dracut*, 19 Mass. L. Rptr. 579 (20050, 2005 WL

14

1660121 at *9.  Here, the very "misappropriation of funds," "unregulated fundraising,"
particularly in the football and boys soccer program," "ethics violations by Parseghian" and
violations of Title IX of which Cass complains, Complaint, ¶¶27-31, were all litigated in the
prior federal civil rights case and, moreover, were all part of Cass's whistleblower claim.  *See*
*Stephen Cass v. Town of Wayland*, 17-CV-11441-PBS, Document No. 126, Jury Instructions (as
given).  Having availed himself of the Whistleblower Act in the federal civil rights action, Cass
cannot maintain any related state law or common law claims here against the Wayland School
Officials here.  Nonetheless, for purposes of verisimilitude, the School Officials will address
Cass's state and common law claims *seriatim*.[10]

        Notwithstanding the absence specifically against the Town Officials,  Cass's conspiracy
claim is leveled against "All Defendants." As a general proposition, civil conspiracy is "a very
limited cause of action in Massachusetts."  *Dexter v. Dealogic, LLC*, 390 F. Supp. 3d 233, 245
(D.  Mass. 2019) (citations omitted) (plaintiff's conspiracy claim dismissed where the defendant-
corporate executives were all plaintiff's superiors and, therefore, "all had coercive power over
[plaintiff] already, and any agreement to act in unison would not  have increased this power."). In
any event, there are two theories of "civil conspiracy" under the Massachusetts common law.
The first, and more rare, is that of a "coercive" civil conspiracy that requires proof "that
defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would
not have had if they had been acting independently." *Jurgens v. Abraham*, 616 F. Supp. 1381,
1386 (D. Mass. 1985) (citations omitted). Cass's Complaint, while not stating so explicitly,
appears to be based upon the Massachusetts law concerning civil conspiracy under a theory of

---

[10] Given that Cass's defamation claim is barred by the Settlement Agreement, principles of res judicata, and are
time-barred, and given the sheer number of statements with which Cass takes issue, the School Officials have not
addressed this particular claim in any further detail.

"concerted action." Under that theory, akin to joint tortfeasor liability, a defendant may be held liable for actions done by others pursuant to a common design or with the defendant's substantial assistance or encouragement.  See *Kyte. Philip Morris, Inc.*, 408 Mass.  162 (1990); *Kurker v. Hill*, 44  Mass.  App.  Ct. 184 (1998). Notably, "vague and conclusory allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice."  *Alston v. Spiegel*, 988 F.3d 564,578 (1st Cir. 2021) (citation omitted). With respect to the School Officials, the exact same argument obtains here.

Cass's conspiracy claim names "All Defendants." However, the Complaint is bereft of any facts which suggest that the Town Officials collectively, conspired to terminate his employment with the Town or that they somehow coerced Superintendent Paul Stein into doing their bidding. *See, e.g., Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977) (to maintain an action for conspiracy to violate plaintiff's civil rights, the complaint must contain "specific facts" establishing the "existence and scope" of the alleged conspiracy); *see also Farrah ex rel. Farrah Estate of Santana v. Gondella*, 725 F. Supp. 2d 238, 248 (D. Mass. 2010)(awarding summary judgment on plaintiffs conspiracy claim because "what is lacking is the showing (or pleading) of an anticipatory agreement, an essential element of common law conspiracy."). Indeed, the Massachusetts Appeals Court recently rejected a conspiracy claim, where there was "some evidence" that two of the defendants "acted independently to press [criminal] charges against [plaintiff]," but no evidence that other co-defendants, "had an agreement with [Officer] Nguyen, or knowingly assisted or encouraged Nguyen to pursue groundless charges" against her. *Mooney v. Warren*, 93 Mass. App. Ct. 1112, at *3 (2018) (Rule 1:28 decision); see also *Fleming v. Dane*, 304 Mass. 46, 52 (l 939)(no conspiracy claim against the Brookline Board of Selectmen who "acted in good faith for the public interest, as they are presumed to do," notwithstanding

16

plaintiffs allegation that the defendants (local bankers) "had and were able to exercise great influence in the community" resulting in the Selectmen' s refusal to issue plaintiff a permit to develop his property for its "greatest value" as a gasoline station.). For these reasons alone, Cass's conspiracy claim should be dismissed.

6.      **Plaintiff Cannot Pursue A Claim Sounding In Negligence (Counts III, IV & VII).**

Cass's claims sounding in negligence are governed by the Massachusetts Tort Claims Act ("MTCA"), which provides the exclusive remedy for such claims against municipalities. M.G.L. c. 258, §§1-2, et. seq. Prior to filing suit under the MTCA, one must make presentment of his claims within two years from the date the cause of action arose, which Cass has not done. *Id.*, §4. *Vasys v. Metro. District Council*, 387 Mass. 51, 55-56 (1982). This alone warrants dismissal of Cass's negligence claims. Town Officials also note that under the MTCA, liability for a municipal employee's negligent acts runs to the municipality, not the individual employee. M.G.L. c. 258 , §2; *Parker v. Chief Justice for Admin. Mngt. Of the Trial Court*, 67 Mass. App. Ct. 174, 178 (2006). Stated differently, under Massachusetts law, public employees are immune from suit for negligent acts performed within the scope of their official duties. *Breault v. Chrmn. of Board of Fire Commr's.*, 401 Mass. 26, 35 (1987). Because Cass has named the individual Town Officials in their individual capacities only, he cannot maintain negligence claims against them or the Town of Wayland.[11]

In addition, at common law, a public official exercising judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in

---

[11] The Defendants note that the failure of the Wayland Police Department to investigate Cass's complaints against a number of Town residents is specifically excluded by M.G.L. c. 258, Section 10(h).

good faith, without malice, and without corruption.  *See Duarte v. Healey*, 405 Mass. 43, 50 n. 5

(1989).   As the allegations in Cass's Complaint relate to everyone, perhaps with the exception of

Police Chief Irving, they do not suggest or support a finding of malice or corruption on their part.

For all of these reasons, Counts III, IV & VII should be dismissed.[12]

### 7.     Plaintiff Has Failed To State A Claim Under §1983 And The Mass. Civil Rights Act ("MCRA")(Count X).

The Defendants pause to note that Cass maintains that he uncovered a host of financial

and other issues in the Wayland Athletic Department at the start of his first year as and in his

capacity as the WHS Athletic Director and that he brought those concerns to his superiors

including the Wayland School Committee.  Complaint, ¶¶ 23-24.  Indeed, he claims the

Defendants "retaliated against him for exercising his First Amendment rights and duties as a

public official and publicly speaking out regarding ongoing violations of state and federal law

within WPS."  *Id.* ¶150.  Hence, by his own admission, this part of Cass's Section 1983 claim is

barred by the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  Among

other things, to state a claim under MCRA one must allege and eventually prove that his rights

secured by the federal or state Constitution were interfered with through threats, intimidation, or

coercion.  M.G.L.  c. 12, §11I.  Cass has not specified how the individuals named in his MCRA

claim acted with threats, intimidation or coercion.   The Complaint does not allege that former

Police Chief Irving used threats, intimidation or coercion to prevent Cass from exercising his

right to criticize the Wayland School Department for its alleged failure to act on his concerns

about the Athletic  Department, and a direct  deprivation of such rights  is not actionable under

---

[12] To the extent Cass's Invasion of Privacy claim supports his Section 1983/MCRA claim, discussed below, it is legally infirm because no such right has been clearly established by the Supreme Court or the First Circuit Court of Appeals.  *See, e.g., Coughlin v. Town of Arlington*, 2011 WL 6370932, at * 12-13 (D. Mass. Dec. 19, 2011).

MCRA. *Freeman v. Planning Board of West Boylston*, 419 Mass. 548, 565 (1995). Chief Swanick's failure to investigate Cass's charges against members of the Wayland community is not actionable under MCRA because Cass has no constitutionally protected right to compel such an investigation. Finally, Cass faults the School Committee Chair, Ellen Grieco, who issued a statement to School employees that they "have a duty to assist in the defense of the Town and to mitigate any damages to the Town." Complaint, ¶155. This statement does no more than memorialize a municipal employee's obligations under the Town's liability insurance policy, M.G.L. c, 258, §8. It does not give rise to a MCRA claim.

As they are named in their individual capacities, the Town Officials would be remiss if they did not raise the argument of qualified immunity. Qualified immunity ordinarily involves a two-step inquiry. First, the court must determine whether the plaintiff's version of the facts makes out a violation of a protected right. Second, the court must determine whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *McKenney v. Mangino*, 873 F.3d 75, 81 (1st Cir. 2017). As to the second prong, "the test is whether existing case law has 'placed the statutory or constitutional question beyond debate.'" *Id.* at 83 (quoting *Ashcroft v. al-Kidd*, 563 U.S.731, 741 (2011)). Notably, the same qualified immunity standard that applies under Section 1983 also applies to claims under the MCRA. *Wilber v. Curtis*, 872 F.2d 15, 23 (1st Cir. 2017). Here, all of Cass's state law claims premised upon his alleged wrongful arrest (Counts IV, V, VII and X), fail because Chief Judge Saris previously found that the WPD had probable cause to arrest him (Cass) back in October, 2015. The same probable cause finding also vitiates at least part of Cass's §1983 and MCRA claims. (Count X). There is no constitutional "right" to compel the police to conduct an investigation into "members of the Wayland community," Complaint ¶154, and, hence, Police Chief Swanick enjoys qualified

immunity from suit on this basis (Count X).  Next, Ellen Grieco did not "*prosecute* Cass for a crime he did not commit," *Id.* ¶155, and she too is entitled to qualified immunity based on the scant allegations against her.  Finally, Cass does not allege that Leisha Simon, Reid Lyons, or Ellen Grieco directed or urged Police Chief Irving to arrest Cass or that they otherwise played any role in his prosecution back in 2016.  Indeed, Cass blames Chief Irving for convincing Superintendent Paul Stein that Cass's non-return of his School-issued computer should be handled by the Wayland Police Department.

For all these reasons, Cass's federal and state civil rights claims should be dismissed.

## VI.    CONCLUSION

For the reasons set forth above, the Town Officials submit that Plaintiff has failed to state a claim against them, and respectfully request that this Court grant their Motion to Dismiss in its entirety together with such other relief as the Court deems just and proper.

Respectfully submitted,

The Defendants,
ROBERT IRVING, PATRICK SWANICK,
SHANE BOWLES, LEISHA SIMON,
REID LYONS, and ELLEN GRIECO,
By their Attorneys,

PIERCE DAVIS & PERRITANO LLP

*/s/ Adam Simms*
_____
Adam Simms, BBO #632617
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
asimms@piercedavis.com

Dated: June 16, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on June 16, 2021.

*/s/ Adam Simms*

_____

Adam Simms, Esq.