# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Stephen F. Cass

                              Plaintiff

v.

ROBERT IRVING, PATRICK SWANICK,
SHANE BOWLES, LEISHA SIMON, REID
LYONS, AND ELLEN GRIECO,

                              Defendants

C.A. No. 1 :21-cv-10966-PBS

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT
DISTRICT OF MASS.
2021 JUL 12 AM 9: 45

## PLAINTIFF STEPHEN CASS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

This case concerns the right of an individual to oppose discrimination and sexism, report

crimes, and uphold the law without having to fear for his well-being or having his life destroyed.

This is the all-too-familiar story about what happens when a person has the courage to stand up

to a powerful football coach or sports team.  In his article about the case, Kevin Cullen of the

Boston Globe Spotlight Team explained it perfectly "What happened to Steve Cass is a classic

case of burying the whistleblower in a small town." (Exhibit A, Pg. A004)

In 2019, Stephen Cass ("I", "me") won a whistleblower case vs Wayland Public Schools

("WPS") et al.  That case was part of a sprawling situation involving police corruption, school

officials covering up crimes including rape and sexual assault, a football coach, his supporters,

and local cops exacting revenge on an innocent person, and widespread spoliation of evidence.

I was employed as athletic director for WPS from 2013-15.  I inherited massive problems

that led to the firing of two athletic directors and the hiring of two auditing firms who uncovered

$100,000's of misused funds. (FAC ¶ 28)  I discovered more issues and reported them to my

bosses (FAC ¶¶ 23-24, 27)  My allegations brought embarrassment to school and town leaders, including the Wayland Police Department ("WPD") who were accused of covering up crimes by football players. [1] (FAC ¶ 28)

After local media reported my allegations, football parents and coaches conspired to attack and defame me. (FAC, ¶¶ 32-33, 35)  I was harassed at the supermarket, jogging, eating dinner…virtually any time I went out in public that summer. (FAC ¶ 32)   The football coach and parents also leveraged their close relationship with the WPD to harass me. (FAC ¶¶ 35-36)  I was ultimately arrested in my Wayland home for felony theft of a virtually worthless 5-year-old computer I had been given permission to keep while working for WPS. (FAC ¶ 52)  The officers involved went to high school with the football coach in the late 1980's. (Def. MOL Exh. M)  Unbeknownst to me, WPD Chief Robert Irving ("Irving") facilitated the arrest and resulting criminal proceedings.  By having me arrested, Irving violated WPD policy and state law, then federal law when he directed an illegal search of my school-issued computers. (FAC ¶¶ 48, 67)  While my criminal trial ended in a rare directed verdict, the actions of Irving and others destroyed my life and career, caused me to lose my home, and pushed me to the brink of suicide.

I signed a Settlement Agreement ("SA") to conclude the previous lawsuit in which I preserved my right to bring future lawsuits against Wayland employees.  That right was important to me since so much evidence had been intentionally withheld during the previous legal action, as will be explained in further detail in this document.

This case has some similarities to the 2019 case, but it involves all new defendants, new claims, and other claims which I did not have a fair and full opportunity to adjudicate due to spoliation of evidence and other factors. (FAC, ¶¶ 18, 70, 124)

---

[1] In her 2011 lawsuit vs WPS, former athletic director Martha Jamieson alleged WPD covered up drinking and drug use by football players and WPS leaders covered up sexual misconduct by football players and coaches. (FAC ¶¶ 22)

I have filed several legal actions this year to comply with various statute of limitations. Despite inferences by the Defendants that these lawsuits are frivolous, I point out the fact that I have won every legal action I have been involved in regarding my time in Wayland, except one.[2] To date, I have been the victim of numerous malevolent legal actions by WPD officers, WPS employees, and football supporters.[3]

I have had bad luck with previous attorneys thus and proceeding pro se.  In my previous lawsuit, two attorneys tried to unlawfully deprive me of significant sums of money.  While all the money in question was returned, one attorney has been arraigned on multiple felony charges.

## ADDITIONAL FACTS

The WPS and WPD engaged in spoliation of evidence and violations of WPD policy:

  i.   Not providing emails sent and received by football coach Scott Parseghian ("Parseghian") as part of my previous legal action. (FAC ¶ 18)

 ii.   For several years, the WPS refused to honor legitimate public records requests for thousands of pages of Parseghian's emails.  At one point, they offered to provide them for $83,501.  I finally obtained some emails after paying $2,800 as part of a public records request in September 2020. (FAC ¶ 18)

iii.   Exculpatory emails sent and received by Reid Lyons were not provided as part of

---

[2] I brought a civilian complaint against WPD Chief Irving in Norfolk District Court.  His lawyer argued it was not the proper venue, a point which has some validity.  I would have preferred to have brought various charges in Framingham District Court and/or with the Middlesex DA, but both those offices have a long, close relationship with Chief Irving and won't even allow me to file a civilian complaint. (Def. MOL Pg. 2 ¶ 1)

[3] 1. I successfully defended two bogus restraining order attempts by WPS coaches and parents that were thrown out by the Judge at the initial hearing, 2. football parents lied to the WPD to have me charged with criminal harassment and stalking charges despite the fact that I was being harassed by them.  Fortunately, district attorneys in Massachusetts and Maine did not allow those charges to proceed, 3. I was falsely arrested in my home, in violation of state law and police policy; 4. I was charged with two bogus felonies that ended with a rare directed verdict by the judge, 5. Information and testimony provided by me led to Scott Parseghian being convicted of state ethics violations, and 6. Northeastern University did a comprehensive study of Wayland athletics and confirmed nearly every claim I made.  In short, all claims that I made which was thoroughly vetted was proven to be true.

my previous legal action.  Only emails which appeared to show I attempted to illegally posses the computer were provided.  (FAC ¶¶, 18, 70-71)

iv.   The WPD never produced a recording of my interrogation at the WPD station on September 8, 2015.  It was legally required to be recorded. (FAC 38, 124)

v.   The WPD did not retrieve a video from Stop & Shop showing football parent Alan Catrina driving his van at me, despite repeated requests. (FAC ¶ 75)

vi.   Irving and Simon ignored subpoenas to appear at my criminal trial (FAC ¶ 12)

vii.   WSC chair Ellen Grieco issued veiled threats to school employees not to testify on my behalf. (FAC ¶155)

viii.   The WPD did not turn over video evidence of me they claimed showed me making obscene gestures to officers. (FAC ¶ 93g)

From 2015 through 2019, I sought evidence to prove WPS officials and the WPD covered up allegations of rape and sexual assault by football players.  After obtaining sufficient evidence to support the allegations, on January 16, 2020 I intended to speak at a WSC meeting but encountered a WPD officer stationed outside the meeting room to intimidate me. (FAC ¶ 80)

## ARGUMENT

### 1.  Standard of Review

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Coll. Hill Properties, LLC v. City of Worcester, 821 F.3d 193, 195–96 (1st Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678.*

Also, in reviewing a motion to dismiss, the Court "accept[s] as true all well-pled facts alleged in the complaint and draw all reasonable inferences in [the plaintiff's] favor." *Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016) (quoting Evergreen Partnering Grp., Inc. v. Pactiv Corp, 720 F.3d 33, 36 (1st Cir. 2013) (second alteration in original)).*

A plaintiff's pro se status should be considered when evaluating the sufficiency of a complaint. "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).*

Therefore, there is factual support for claims in this case and liability by the Defendants.

2. **The Plaintiff's Claims are NOT Barred by the Settlement Agreement**

I signed the SA certain of its actual meaning and that it allowed me to bring future legal action against Wayland employees not specifically named in the SA.[4]

In their MOL, the Defendants used the words "party" or "parties" six times in one paragraph to prove their point. (Def. MOL, Pg. 10)  That supports my position.  The previous SA was an agreement between the parties in that case, not me and every person on earth.  None of the defendants in this case were parties in my previous lawsuit and thus are not covered by the SA.

Regarding the true meaning of the SA, in their MOL the Defendants used the deceptive phrase " Cass agreed to release "the Town of Wayland, Wayland Public Schools, Wayland Police Department[ ... ] and its respective officials, officers, directors, principals, members, shareholders, agents, servants, employees, representatives, parent companies, subsidiaries, affiliates, insurers and attorneys, both past and present (hereinafter the "Releasees ") [ ... ] from

---

[4]The meaning of the SA was confirmed by my father J. Foster Cass, a 40-year high school English teacher, and his former teaching colleagues.

any and all claims [ ... ] or under any other local, state or federal law, regulation, ordinance or bylaw[ ... ] or pursuant to any common law theory of tort or contract." (Def. MOL, Pg. 7, ¶ 2)

That false statement was created by compiling various pieces of the SA conjoined to appear as one quote. Here is the actual language: Paragraph 1 of the SA states: "Stephen F. Cass (hereinafter the "Releasor") hereby remises, releases, acquits and forever discharges the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and **its** respective officials, officers, directors, principals, members, shareholders, agents, servants, employees…" (Def. MOL Exhibit A, ¶ 1)

This is case of basic middle school English. The possessive determiner 'its' instead of 'their' in the SA means all entities subsequent to the word 'its' can only refer to a singular item - in this case Cabot Risk Strategies, LLC. That means "its respective officials, officers […] employees" only refers to Cabot Risk Strategies, LLC and not the Wayland Schools or Town.

Under Massachusetts law, "Failure to read a release or understand its contents does not void its effects." *Lee v. Allied Sports Associates, Inc., 349 Mass. 544 (1965); see also Release, 17 MASS. PRAC., Prima Facie Case § 17.31 (5th ed. 2020).* The drafters of the SA should have understood the linguistic and legal meaning of the document before giving it to me to sign.

Finally, "Massachusetts law construes ambiguous contract language against the drafter." *ER Holdings, Inc. v. Norton Co., 735 F. Supp. 1094 1100 (D.Mass.1990) (citations omitted) (applying Massachusetts law).* "Indeed, the drafter of an ambiguous contractual term is generally held to any reasonable interpretation attributed to it by the nondrafting party." *Id. (citing Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721,724,363 S,N.E.2d,688)(1997).* As I was the non-drafting party of the SA, my reasonable interpretation should be accepted as the legal

interpretation of that document.  I believed upon signing the SA that it did not preclude me from

bringing future legal action against Wayland employees or entities not named in the SA.

Defendants argue that another court has already resolved the meaning of the SA, but that

case is presently with the appellate court. [5] (Def. MOL Exhibit C)  In that case, as a pro se

plaintiff, I did a poor job explaining the English language component and did not provide relevant

case law.  Thus, that unresolved matter bears no influence here.

Regardless, I believe this is a question to be resolved through discovery, expert witnesses,

and/or at trial.  I am certain any English expert would agree with my position.

Therefore, the Plaintiff's Claims are not barred by the Settlement Agreement.

### 3.   **Plaintiff's Claims Are NOT Barred By The Statute Of Limitations.**

A cause of action accrues when the plaintiff "learns, or reasonably should have learned,

that he has been harmed by the defendant's conduct." *White v. Peabody Constr. Co., 386 Mass.*

*121,129 (1982).*  Dates applicable to the three-year statute of limitations include:

February 28, 2018.  I received a large number of documents from the WPS and WPD.

It's the first date that applies to all claims and defendants. (FAC ¶ 14)

Summer of 2018.  I received documents through multiple public records requests.  This

date applies to Lyons and Swanick. (FAC ¶ 124)

July 2018.  For the first time, I learned that Irving was the person responsible for

facilitating my arrest and prosecution. (FAC ¶ 16)

September 11, 2020.  This is the date I received hundreds of pages of Parseghian emails.

These document provide evidence of an expansive conspiracy directed against me by Parseghian,

football supporters, and WPD officers. (FAC ¶ 18)

---

[5] Stephen Cass v Augusto Saviatto, Orleans District Court, CA No. 2026CV0121

January 16, 2020.  On this date, an armed WPD officer was placed at a WSC meeting to prevent me from speaking.  This date applies to Swanick and Grieco. (FAC ¶¶ 80, 154)

Bowles and Irving were not present at my arrest and Irving ignored his subpoena to appear as a witness at my trial.  Thus, I had no idea of their involvement until 2018. (FAC ¶ 12) Plus, I did not charge Bowles with claims pertaining to my unlawful arrest.

The Parseghian emails I received on September 11, 2020 were the most critical documents in this case.  These documents proved what I had known for years – the football parents conspired to harass and defame me throughout 2015-16.  Without these emails, the audio recording of my September 8, 2015 interrogation at the WPD, or the Stop & Shop video from 2016, I had no proof I was being victimized by the football community and a widespread conspiracy which included WPD officers.  These documents allowed me to disprove false police reports and statements made by the WPD who claimed I was the person initiating harassment.

In addition, the severe emotional distress did not manifest itself until the Spring of 2018, at which point I sought and received counseling. (FAC ¶ 15)

Had I brought multiple legal actions in 2018, 2019 and again in 2021 after receiving the voluminous Parseghian emails and other unknowable emails, the defendants could legitimately have claimed I brought this legal action 'piecemeal' and engaged in 'claim splitting'.  Bringing this action in February 2021, within the three-year statute of limitation window for all claims, was in the best interest of the defendants and least burdensome to our legal system.

Therefore, the filing of this lawsuit was done within the three-year statute of limitation for all claims in this legal action.

### 4.  Plaintiff's Claims Are NOT Barred By The Doctrine Of Res Judicata

#### a.  Not a Full and Fair Opportunity

This is an extremely complicated case, made even more complicated by the nefarious actions of WPS officials and the WPD.  The overriding intent of res judicata is stated here:

> "We further note that res judicata is not a shield to protect the blameworthy. The doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time, but rather a rule of fundamental and substantial justice, or public policy and of private peace. The doctrine may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.'"

*Grava, 73 Ohio St.3d at 386, 653 N.E.2d at 232 (Douglas, J., dissenting), quoting 46 American Jurisprudence 2d (1994) 786-787, Judgments, Section 522.*

Also, "There is something wrong with a legal doctrine that could be used in a situation like the one before us to reward a party for misrepresenting or destroying evidence." *Davis v. Wal-Mart Stores, Inc., 64 F. Supp. 2d 1176 (M.D. Ala. 1999)*

In their defendants' MOL, it states "the party against whom claim preclusion is asserted had a full and fair opportunity to for judicial resolution of the same issue in the earlier action." *Mancuso v. Kinch/a, 60 Mass. App. Ct. 558, 568 (2004) (citations omitted)* Regarding the terms 'full and fair', *Restatement of Torts 28(5)(c)* states "because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action."

This case is about the power of a small-town football coach and the lengths that people will go to coverup illegalities. He was the central figure in the entire case yet his name is barely mentioned in Judge Saris' Memorandum and Order regarding Summary Judgment.[6]  That's because his emails were withheld.  It would have been a waste of my time to bring claims against Irving, Bowles and Swanick without the Parseghian emails, Those emails turned the case 180

---

[6] CASS v. TOWN OF WAYLAND Civil Action No. 17-11441-PBS.

degrees – from one where WPD officers could claim they were 'just doing their job' to one where they were part of a conspiracy directed against me.[7] (FAC ¶ 117)

As stated above, the doctrine of res judicata should not be invoked in the interest of "justice and fairness". There is something inherently wrong with rewarding a party for "misrepresenting or destroying evidence". Res judicata should not be applied so rigidly as to "work an injustice". I have not previously brought claims against the defendants so they have not yet been required to account for their actions. They should not be allowed to escape justice because important documents were intentionally withheld and because WPD officers falsified reports and did not produce audio evidence, thus facilitating the coverup of a conspiracy and their own tortuous actions. (FAC ¶¶ 38, 72, 75, 124)

The last civil rights violation occurred in 2020, after the SA was signed. (FAC ¶ 80) That action connects to previous actions through the continuing violations doctrine.

### b. Amending the Previous Complaint Was Not An Option

When I learned of Swanick's and Irving's tortuous actions, discovery in my previous legal action was closing in a few weeks and my attorney was withdrawing from the case. Since I knew the defense was likely withholding evidence, it did not make any sense to add those individuals to the previous legal action. (Def. MOL, Exh. B, ¶¶ 7-8) Before I found successor counsel, discovery had closed, and summary judgment was less than a month away. I could not obtain additional discovery to bring claims against Irving or Swanick. It made more sense to obtain all relevant documents before taking action against them. Had WPS officials turned over emails in 2018 or honored public records requests and had WPD officers not violated laws

---

[7] Chief Irving was "concerned about the number of things that were occurring with Mr. Cass and whether or not this could escalate into more of a problem than there already was." Docket No. 79-4 at 46:2-7. *SJ Cass v Wayland Pg. 6*

10

regarding interrogations, this legal action could have concluded years ago. (FAC ¶¶ 18, 38, 124) In addition, I had issues with my successor counsel who would not appeal elements of my case.

In short, people should be allowed to escape justice by withholding and destroying evidence and breaking various laws. Otherwise, we do not have much of a legal system. Thus, res judicata should not be invoked in the interest of justice and fairness.

### 5. <u>Malice On The Part Of The Defendants Underlies The Entire Case.</u>

Why else would Irving and Grieco deviate from past practices, their own policies, and the law? "Section 92 does not define "actual malice," but a 1903 case from the Massachusetts Supreme Judicial Court (SJC) defined the term as "malicious intention" or "ill will" *Conner v. Standard Publ'g Co., 67 N.E. 596, 598 (Mass. 1903)."* [8]

Because the actual malice standard is a subjective one which must necessarily be based on the evaluation of the defendant's state of mind at the time an allegedly defamatory statement about the plaintiff is published, *Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 688 (1989),* and because direct evidence of actual malice is rare, it is ordinarily proved through inference and circumstantial evidence. *Levesque v. Doocy, 560 F.3rd 82, 90 (1st Cir. 2009), citing Bose Corp., 692 F.2d at 196; Harte-Hanks, 491 U.S. at 688.*

I allege that the conduct of and statements made by Irving, Swanick, Bowles and Grieco involved actual malice.   Circumstantial evidence in support of actual malice includes:

    a. <u>Irving</u>

        i.  He intentionally employed detectives friendly with and who went to high school with Parseghian to conduct my criminal investigation, rather than 'impartial' detectives. (FAC Exh. M. FAC ¶¶ 58, 61-62, 134)

---

[8] Harvard Law Review Vol. 123, No. 3 (Jan.,2010), pg. 786

    ii.  He knew WPS officials might be less than honest and have ulterior motives for reporting the alleged crime. (FAC ¶¶ 27-28, 31, 45, 93d)

    iii.  Football parents had been "chewing the chief's ear off". (FAC ¶ 36)

    iv.  Football parent Clayton Jones demanded Irving punish me. (FAC ¶ 36)

    v.  The relationship between WPD officers and Parseghian. (FAC Exh. M. ¶¶ 30, 105)

    vi.  He violated WPD policies and state and federal law. (FAC ¶¶ 38, 48, 63, 67)

    vii.  He acted impartially in a different case just weeks later. (FAC ¶ 61)

    viii.  He did not pursue charges against other Wayland employees accused of theft. (FAC ¶ 59)

    ix.  He did not investigate eight other WPS computers reported missing to the WPD. (FAC ¶ 60)

    x.  Irving's own words suggesting he had an ulterior motive to arrest me. (FAC ¶117. Plaintiff OppMtd, Pg. 10, footnote 5)

    xi.  The unprecedented posting of my mugshot on the WPD Facebook page. (FAC ¶ 66)

    xii.  He would be a 'hero' to the football community and the many WPS officers friendly with Parseghian if he arrested me. (FAC Exhibit M, FAC ¶¶ 30, 105)

b.  Grieco

    i.  She was publicly and repeatedly criticized for her handling of my employment situation and the allegation I made. (FAC ¶¶ 27, 31)

c.  Swanick and Bowles

    i.  Many of the same examples of malice apply to them as Irving. (ii, v, vi, viii, xii)

    ii.  Bowles was a high school football teammate of Parseghian and is still one of his

good friends.  (FAC Exhibit M. FAC ¶ 30)

Therefore, ill-will and malicious intention, the standards of actual malice, have been established in regard to the words and actions of Irving, Swanick, Bowles, and Grieco.

### 6.  Plaintiff's Claims Are NOT Barred by The Exclusivity Provision Of The MA Whistleblower Act

A bizarre claim by the Defendants.  None of my claims refer to my employment situation and I did not bring a MA Whistleblower claim.  The MA Whistleblower Act does not apply here.

### 7.  Plaintiff's Complaint States a Claim for Conspiracy (Count I).

The Defendants make another odd claim that this legal action involved the Defendants decision to "terminate his employment" (Def MOL. Pg. 16, ¶ 2).  I never made that claim.  My employment situation with WPS is not part of this case.  Here is what I stated in the complaint, "Defendants acted in unison to interfere with Cass's civil rights, to defame him, wrongfully imprison him, and intentionally cause him severe emotional distress in an effort to punish him for speaking out publicly with respect to the following matters…".  (FAC ¶ 85)

In Massachusetts, "Th[e] second type of civil conspiracy is more akin to a theory of common law joint liability in tort."  *Aetna Cas. Sur. Co., 43 F.3d at 1564.*  This form of conspiracy requires "a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement."  Id.; *see, e.g., Kurker, 44 Mass.App.Ct. at 189–190.*

As stated in the Defendant's MOL, to maintain an action for conspiracy to violate a plaintiffs civil rights, the complaint must contain "specific facts" establishing the "existence and scope" of the alleged conspiracy); *see also Farrah ex rel. Farrah Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 248 (D. Mass. 2010)*  I cannot imagine a case where existence and scope is more obvious.  The timeline of events, absurdity of the arrest, the defendants' lies, the implied

threats to potential witnesses, police officers repeatedly violating their own policies and state law.  Each factor supports conspiracy by common design and agreement.

Therefore, Plaintiff does NOT Fail to State a Claim for Conspiracy.

**8.  Plaintiff's Complaint States a Claim for Defamation (Count II).**

Under Massachusetts law, "A plaintiff alleging libel must ordinarily establish five elements: (1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss."  In addition, "A statement that "tend[s] to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community" is considered defamatory. *Phelan, supra, at 56, quoting Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975)."*

Comments made by Irving, Bowles and Swanick all meet this standard. (FAC ¶¶ 93-95) They made statements about me that were defamatory, false and malicious, and designed to damage my reputation in the community.  The five elements required to prove defamation are all satisfied.  Therefore, there is a Prima Facia Case for Defamation.

**9.  Plaintiff's Complaint States a Claim for Invasion of Privacy (Count III).**

In Massachusetts "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy" and gives the Massachusetts Superior Court jurisdiction to hear the cases. *Ryan v. Normandin, 2001 Mass. App. Div. 148 (2001) (upholding dismissal of claim in District Court)*

Irving initiated an illegal search of my computer and then shared private information with WSC members. (FAC ¶ 67) He did background checks on me and my family without a legal basis. (FAC ¶ 67)  There was no legitimate purpose to search my computers other than to dredge

up any dirt about me which Irving could later share with the WSC and the Wayland community.

Four types of invasion of privacy claims are recognized in Massachusetts.  The first two apply to this case: (1) intrusion of a person's physical solitude or seclusion; (2) public disclosure of private facts about a person.

In the Def. MOL, it states: ("Employees have no reasonable expectation of privacy in files on a company computer that are 'freely accessible to others in the [company], including the owners and secretaries.'")). *Cf. United States v. Zeigler, 474 F.3d 1184, 1191 (9th Cir.2007)*

This situation is better explained by *O'Connor v. Ortega, 480 U.S. 709 (1987)*, a seminal case on workplace searches of government employees.  According to Bryan R. Lemons, Assistant Director at Federal Law Enforcement Training Centers, citing *O'Connor*, "A search for work-related purposes (either non-investigatory or for work-related misconduct) must be reasonable based on the totality of the circumstances. To qualify as reasonable, the search must be (1) justified at its inception and (2) permissible in scope. If the search is made solely to uncover evidence of criminal misconduct, then probable cause and a search warrant are required, unless an exception to the warrant requirement of the Fourth Amendment exists (e.g., consent)."[9]

A search "will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct, or that the search is necessary for a non-investigatory work-related purpose such as to retrieve a needed file." *O'Connor, 480 U.S. at 726.*

In this case, the search was not justified or reasonable as there was no work-related misconduct being investigated and no non-investigatory work was being done.  Going through

---

[9] U. PA. JOURNAL OF LABOR AND EMPLOYMENT LAW [Vol. 7:1] Pg. 33.  Bryan R. Lemons, Warrantless Workplace Searches of Government Employees

the search history of my private Yahoo! accounts was in no way permissible in scope. Also, the

police did not obtain a search warrant as required under *Ortega*. (FAC, Pg. 2, ¶ 5.  FAC ¶ 67)

Therefore, Irving did intrude upon my seclusion by directing the search of my computers

in violation of my 4th Amendment rights and disseminating information from those searches

with members of the WSC and WPS officials.  Therefore, Count III should be upheld.

**10. <u>Plaintiff's Complaint States a Claim for Negligent Supervision (Count IV).</u>**

I agree to withdraw this claim.

**11. <u>Plaintiff's Complaint States a Claim for Malicious Prosecution (Count V).</u>**

To establish a claim of common-law malicious prosecution, a plaintiff must show: "(1)

the commencement or continuation of a criminal proceeding against the eventual plaintiff at the

behest of the eventual defendants; (2) the termination of the proceeding in favor of the accused;

(3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney,*

*241 F.3d 46, 53 (1st Cir. 2001) (citing Correllas v. Viveiros, 410 Mass. 314, 318 (1991)).*

These standards have all been met in this case.  In defense, Irving claims 1. he did not file

the affidavit, 2. "a criminal complaint can only be issued by a justice or a clerk" and 3. "Only the

District Attorney can prosecute someone for a crime." (Def. MOL, Pg. 4, ¶ 2)  By these

standards, no one could ever be charged with malicious prosecution.

Malice was established above.  Lack of probable cause was confirmed by both the

Middlesex DA's office and the Judge who prosecuted my criminal case. (FAC ¶¶ 63-65)

Probable cause in the context of a malicious prosecution claim "has long been defined as

`such a state of facts in the mind of the . . . (defendant) as would lead a man of ordinary caution

and prudence to believe, or entertain an honest and strong suspicion,' that the plaintiff had

committed a crime." *Carroll v. Gillespie, 436 N.E.2d 431, 435 (Mass. App. Ct. 1982) (alteration*

*in original) (quoting Lincoln v. Shea, 277 N.E.2d 699, 702 (Mass. 1972)).*

Irving did not exercise "ordinary caution and prudence".  In having me charged with a crime, he violated multiple WPD policies and state law. (FAC ¶¶ 38, 48)  Irving had a legal obligation per WPD policy to treat me fairly and proceed with caution since he knew the WPS and I were at odds over my employment situation and their coverup of crimes (FAC ¶¶ 56-57)

Irving initiated and both he and Grieco continued a legal proceeding knowing the charges lacked probable cause and were without merit. (FAC ¶¶ 63-65)  Even a cursory review of emails would show I had no intention to defraud the school of their property. (FAC ¶ 71)  Any method to objectively value the computer would have provided a value well under $100. (FAC ¶¶ 63)

Therefore, a claim exists for malicious prosecution against Grieco and Irving.

### 12. **Plaintiff's Complaint States a Claim for Abuse of Process (Count VI).**

According to Irving's own words, he used the criminal proceedings for an ulterior motive, the standard for establishing an abuse of process claim. (see Pg. 12, ¶ x)

The criminal charges, arrest, and prosecution had no legitimate purpose and were not intended to legitimately uphold the law.  Instead, they were done to embarrass me and to prevent me from speaking publicly about serious issues and violations of law.

According to Irving and WPS Superintendent Paul Stein, the Wayland schools and WPD had not acted in a similar manner when confronted with possible theft of equipment by school or town employees. (FAC ¶ 60)  The arrest was a retaliatory action for my causing embarrassment of WSC, WPS and WPD leaders.  It was not done in accordance with WPD policy and was inconsistent with past school and police practices. (FAC ¶¶ 48, 59-60)

Therefore, the abuse of process claim should be upheld.

### 13. **Plaintiff's Complaint States a Claim for Intentional Infliction of Emotional Distress (Count VII).**

To succeed on an IIED claim, one must show: "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme andoutrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994) (citing Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976))*. "To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and ... utterly intolerable in a civilized community." *Id.*

Irivng, Swanick and Grieco intended to inflict emotional distress by conspiring to defame me, arrest me, continue the bogus prosecution of me, and to turn me into a pariah in Wayland by lying to the public.  Irving and Swanick inflicted emotional distress by not investigating complaints as part of a conspiracy with the football community. (FAC ¶¶ 77-78, 123, 135-136)

Additionally, "high order of reckless ruthlessness or deliberate malevolence" required for a showing of conduct that is "intolerable." *Conway v. Smerling, 37 Mass. App. Ct. 1 , 8 (1994), citing Agis v. Howard Johnson Co., 371 Mass. 140 , 144-145 (1976), and Foley v. Polaroid Corp., 400 Mass. 82 , 99 (1987).*  These standards all apply to Irving, Swanick and Grieco.

Therefore, Count VII does not fail.

### 14. <u>Plaintiff's Complaint States a Claim for Negligent Infliction of Emotional Distress (Count VIII).</u>

I agree to withdraw this claim.

### 15. <u>Plaintiff's Complaint States a Claim for False Imprisonment (Count IX).</u>

Irving caused me to be falsely arrested and brought to jail and deprived me of my personal liberty without the legal authority to do so.  Per his own admission, he was the person who facilitated the criminal action against me. (FAC ¶¶ 50-51)  He intended to cause my confinement, I was conscious of the confinement, and the confinement was done without my

consent.  Having served as WPD chief for over a decade, Irving was aware that arresting me in

my home without an arrest warrant violated WPD policy. (FAC ¶¶ 48, 146)

As determined by the Middlesex DA's office, there was no probable cause to charge me

with a felony and thus either arrest or imprison me.  The rare directed verdict issued by Judge

Stark at trial is further evidence of the absence of probable cause. (FAC ¶ 65)

Therefore, the claim of false imprisonment does NOT fail.

### 16. <u>Plaintiff Has Stated A Claim Under 42 U.S.C. Section 1983 Or The Massachusetts Civil Rights Act (Count X)</u>

A § 1983 claim "has two essential elements: the defendant must have acted under color of

state law, and his or her conduct must have deprived the plaintiff of rights secured by the

Constitution or by federal law." *Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008)*

*(quotation omitted).* Additionally, the plaintiff must show "that the [defendant's] conduct was the

cause in fact of the alleged deprivation." *Id. (quotation omitted).* The MCRA is the state

analogue to § 1983 but "is narrower than § 1983 in that it limits its remedy to conduct that

interferes with a secured right `by threats, intimidation or coercion.'" *Nolan v. CN8, 656 F.3d 71,*

*76 (1st Cir. 2011) (quoting Mass. Gen. Laws ch. 12, § 11H)).*

The absence of probable cause is explained in detail above. (Pg. 16-17.  Pg. 19, ¶ 2)  The

Framingham Clerk of Court acted upon a falsified affidavit in support of a search warrant.  It was

reasonable for the Clerk to assume the WPD did not have an ulterior motive connected with their

criminal application.  However, he did approve an arrest warrant.  That is the central issue of the

case.  If Irving and his officers proceeded with criminal charges in accordance with the law and

WPD policy, I would have been afforded a clerk's hearing.  The decisions of the Middlesex DA

and the Judge who presided over my criminal trial confirm the absence of probable cause to

arrest me.  And, as stated previously, Irving acted with actual malice.

Swanick conspired with the football community by not investigating charges I brought forward, thus allowing me to be subjected to harassment. He also violated by 1st Amendment rights in 2020. Grieco deprived me of civil rights and liberties by placing an armed police officer at WSC meetings from 2015-20 and continuing by baseless prosecution. (FAC ¶¶ 80, 87) She also deprived me of my ability to speak at WSC meetings. (FAC ¶¶ 150, 154)

The Defendants claim qualified immunity protects them, however, qualified immunity "protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Pagán v. Calderón, 448 F.3d 16, 31 (1st Cir. 2006) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986))* In this case, each defendant knew their actions violated the law and deprived me of my "right of enjoying and defending his life and liberty" and "safety and happiness" as defined in the Massachusetts Declaration of Rights.

Grieco, Irving, and Swanick acted under the color of law. For that reason and others state above, my federal and state civil rights claims do not fail.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's motion, with the exception of claims IV and VIII, which are rooted in negligence.

## REQUEST FOR HEARING

The Plaintiff respectfully requests a hearing before the Court in regard to this matter.

Respectfully submitted,
The Plaintiff,

STEPHEN CASS
PO Box 2723
Orleans, MA 02653
339.368.2961

July 12, 2021

## **CERTIFICATE OF SERVICE**

I, Stephen F. Cass, hereby certify that on this date, July 12, 2021, I delivered a true and accurate copy of this document by email to the defendants' attorney Adam Simms.

-------------------------------------------------------
STEPHEN CASS