UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN F. CASS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-10966-PBS |
| | ) |
| ROBERT IRVING, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
[Docket No. 5]

January 10, 2022

Boal, M.J.

Defendants have moved to dismiss <u>pro se</u> plaintiff Stephen F. Cass's complaint against them. Docket No. 5.[1] For the following reasons, I recommend that Judge Saris grant the Defendants' motion.

I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Cass was employed as Director of Athletics and Health and Wellness Instructor for the Wayland Public Schools from July 2013 through June 23, 2015. Complaint at ¶ 19. Cass alleges that, during the interview process, he was never informed of the severe fiscal and operational

---

[1] On July 13, 2021, Judge Saris referred the case to the undersigned for full pretrial management, including report and recommendation on dispositive motions. Docket No. 13.

[2] Because this matter is before the Court on a motion to dismiss for failure to state a claim, the Court "recite[s] the facts as alleged in the plaintiff[']s complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the non-moving party." <u>Abdisamad v. City of Lewiston</u>, 960 F.3d 56, 57 (1st Cir. 2020) (quoting <u>Squeri v. Mount Ida Coll.</u>, 954 F.3d 56, 61 (1st Cir. 2020)). Except as set forth below, this Court has not considered facts presented by the parties in their memoranda of law that are not alleged in the Complaint.

1

problems which had plagued Wayland athletics for years. Id. at ¶ 20. Cass claims that while scrutinizing financial documents in August 2013, he uncovered a long list of issues that had not been mentioned to him before accepting his position, including violations for which the high school football coach, Scott Parseghian, was ultimately "convicted" by the State Ethics Commission in December 2017. Id. at ¶ 23. He further alleges that he informed his superiors of the many "illegal" practices within the athletic program, but none were willing to support Cass in resolving the problems or confronting the coaches involved. Id. at ¶ 24.

According to Cass, under his direction, Wayland varsity teams achieved more on-field success than at any time in history. Id. at ¶ 25. He also reduced the budget deficit from nearly $100,000 to $7,000 in each of his two years as athletic director. Id. Despite these accomplishments and the alleged support of the vast majority of Wayland High School coaches, athletes, and parents, Cass was informed that his contract would not be renewed in May 2015. Id. at ¶ 26.

Cass alleges that, as a result of Wayland Public Schools' leaders attempting to fire him illegally, he took his complaints to the Wayland School Committee in accordance with school policy. Id. at ¶ 27. He wrote them a comprehensive letter on May 19, 2015 and, having received no reply, spoke publicly at a Wayland School Committee meeting one week later. Id. According to Cass, Wayland Public Schools officials and Wayland School Committee members refused to meet with him to discuss the issues he uncovered, were intent on firing him illegally, and repeatedly lied to the public to discredit Cass. Id. at ¶ 28. Cass spoke publicly at numerous Wayland School Committee meetings in the summer and fall of 2015, imploring Wayland School Committee members to investigate his claims regarding fiscal fraud, ethics violations, sexual assault, cheating, and illegal hiring practices, among other things. Id.

In the summer and fall of 2015, at the behest of football parents, Wayland Police Department officers who attended Wayland High School with Scott Parseghian, the head varsity football coach, attempted to have Cass charged with various crimes, despite Cass being the real victim of harassment.  Id. at ¶ 35.  At the insistence of Chief of Police Robert Irving, Detective Berger interrogated Cass on September 8, 2015 regarding complaints filed by the same football parents who organized the harassment of Cass.  Id. at ¶ 36.  The interrogation concerned Cass documenting the football team's cheating and reporting those violations to the MIAA.  Id.  Cass alleges that the interrogation was not recorded, in violation of Wayland Police Department Policy.  Id. at ¶ 38.  No notes were taken, and the report pertaining the interview was "mostly falsified."  Id.

During Cass's final week of employment with the Wayland Public Schools, he exchanged emails and had numerous meetings with Human Resources Director Reid Lyons regarding exit procedures and the collection of Cass's WPS-owned equipment.  Id. at ¶ 39.  Cass informed Lyons that he had a doctor's appointment scheduled for the afternoon of June 23, his last day of employment.  Id.  Cass and Lyons agreed to meet the following morning if the doctor's appointment ran late.  Id.  Lyons also instructed Cass to return all of his WPS-owned items to him and not to IT assistant Keith Clevinger, who had requested Cass return his WPS-issued computer to him.  Id.

On his last day of employment and after his doctor's appointment, Cass was chatting with basketball coach Dennis Doherty in Doherty's office when Assistant Superintendent Brad Crozier appeared in the doorway.  Id. at ¶ 40.  Crozier accused Cass of missing his meeting with Lyons and demanded that Cass return all of his WPS-owned items to him.  Id.  For 10-15 minutes, Crozier harassed, badgered, and provoked Cass by making accusatory and belittling

3

comments. Id. at ¶ 41. Cass returned his WPS-owned items to Crozier, including his new Macbook Pro, computer, and keys. Id. Crozier also inquired about a second Macbook Pro computer to which Cass honestly explained he had previously broken and returned to IT staff. Id.

On June 24, 2015, Cass called Lyons and left a voicemail stating that he had returned his items to Crozier. Id. at ¶ 42. By the last day of June 2015, Cass believed that he had returned all items that the Wayland Public Schools expected him to return. Id. at ¶ 44. He did not return several items that he had been informed he could keep, including a five-year old laptop that an IT employee indicated would otherwise be junked and need not be returned. Id.

On the morning of October 16, 2015, Wayland Police officers arrived at Cass's home with a search warrant for the five-year old computer he believed he had been given permission to keep fourteen months prior. Id. at ¶ 46. Cass immediately provided the computer to the officers and cooperated fully. Id. at ¶ 47. However, Cass was handcuffed, arrested, and transported to the Wayland Police Station where he was charged with felony larceny over $250. Id. According to Cass, it was Chief Irving who decided to charge Cass with a crime. Id. at ¶ 50. The Wayland Public Schools did not want an arrest but Chief Irving encouraged them to file a complaint. Id. at ¶ 51.

Cass alleges that the Wayland Police did not properly investigate the matter. See id. at ¶¶ 52-58. He also alleges that the officers investigating the matter, Berger and Bowles, were not objective in their investigation as they went to high school with the football coach. Id. at ¶ 58. The trial on the charges against Cass ended with a directed verdict in favor of Cass at the conclusion of the prosecution's case. Id. at ¶ 65.

Cass further alleges that Parseghian and football parents conspired with Officers Bowles

and Berger to submit falsified police reports to damage Cass's reputation. Id. at ¶ 72. In the months following his trial, Cass continued to be harassed around Wayland. Id. at ¶ 73. According to Cass, the Wayland Police Department refused to investigate Cass's allegations of harassment by certain football parents. See id. at ¶¶ 73-78. Ultimately, Cass felt threatened by Wayland Police officers and football parents, was concerned for his well-being, and sold the Wayland home he had bought less than two years earlier. Id. at ¶ 79.

These and other related events led Cass to file a multi-count civil rights lawsuit in 2017 against the Town of Wayland, the Wayland Public Schools, the Wayland Police Department and four Town and/or school employees.[3] See Cass v. Town of Wayland, et al., No. 17-cv-11441-PBS (D. Mass.) (the "2017 Action"). In the 2017 Action, Cass alleged that his contract non-renewal was in retaliation for his engaging in certain protected activities under Title IX and for raising other concerns about the Wayland High School Athletic Department. See 2017 Action at Docket No. 46. He also alleged, as he does here, that he was arrested and prosecuted for not returning an used old laptop in retaliation for his exercise of his First Amendment rights. See id. Cass's 2017 Action included several of the same claims he asserts here including defamation, intentional infliction of emotional distress, and claims under 42 U.S.C. § 1983 and M.G.L. c. 12, § 11H. See id. On May 30, 2019, Judge Saris granted in part the defendants' motion for summary judgment, dismissing several claims. 2017 Action at Docket No. 104.

Two claims proceeded to trial: Cass's whistleblower claim and his claim for retaliation under Title IX. Following an eight-day trial, the jury found in Cass's favor on the whistleblower

---

[3] Specifically, Cass named Dr. Paul Stein, Superintendent of the Wayland Public Schools; Brad Crozier, Assistant Superintendent of the Wayland Public Schools; Allyson Mizoguchi, the principal of Wayland High School; and Jamie Berger, a police officer with the Wayland Police Department. See Amended Complaint in 2017 Action, Docket No. 46, at ¶¶ 5-8.

claim and for the individual school officials on the Title IX retaliation claim.  See 2017 Action at Docket No. 171.

While various post-trial motions were pending, on December 2, 2019, the parties entered into a Settlement Agreement, whereby Cass agreed to release:

> the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and **its** respective officials, officers, directors, principals, members, shareholders, agents, servants, employees, representatives, parent companies, subsidiaries, affiliates, insurers and attorneys, both past and present (hereinafter the "Releasees"), of and from any and all claims, compensatory damages, punitive damages, obligations, promises, covenants, agreements, contracts, controversies, suits, actions, causes of action, injuries (including but not limited to, emotional distress), debts, harms, sums, expenses, costs, attorneys' fees, liabilities and demands, both in LAW and EQUITY, which as against said Releasees, or any of their heirs, executors, administrators, successors or assigns, the Releasor ever had, now has, or may ever have, whether known or unknown, anticipated or unanticipated, by reason of any matter, cause or event whatsoever, from the beginning of the world to the date of the execution of this General Release & Confidential Settlement Agreement, including, but not limited to, any claim arising out of, related to, or connected in any way to any disparate treatment, harassment and/or retaliation allegedly suffered or experienced by the Releasor, as such claims are asserted, or could have been asserted, in the matter of *Stephen Cass v. Town of Wayland, et al.*, United States District Court (D. Mass.) C.A. No. 1:17-cv-11441 (PBS). . .

Docket No. 6-1 at 2 (emphasis added).[4]  On December 20, 2019, the parties filed a stipulation of

---

[4] Defendants attached the Settlement Agreement to their motion to dismiss.  Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into a motion for summary judgment.  Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  However, when a complaint fails to state a claim unless the defendant retains some measure of liability, dependent on an agreement, the court may consider the agreement in evaluating a motion to dismiss.  See id. at 34 (holding that district court properly considered settlement agreement when ruling on motion to dismiss because existence of defendant's potential liability depended directly on whether claims had been released under settlement agreement and plaintiff did not dispute the settlement agreement's authenticity).  Here, whether the defendants retain some liability in this case is dependent on whether the release contained in the Settlement Agreement covers the claims alleged in the Complaint.  In

dismissal with prejudice.  2017 Action at Docket No. 201.

Cass alleges that on January 16, 2020, Wayland officials engaged in a "final act of intimidation and retaliation."  Complaint at ¶ 80.  Cass emailed Wayland School Committee officials and Chief of Police Patrick Swanick that he intended to speak at the Wayland School Committee meeting the next day.  Id.  Cass had prepared a speech documenting how Wayland officials and the Wayland Police Department had covered up past incidents of rape and sexual assault.  Id.  Upon Cass's arrival, he encountered Officer Chris Cohen, who was one of three Wayland Police officers who had arrested Cass in 2015.  Id.  Rather than risk being falsely arrested again, Cass left immediately and chose not to speak at the Wayland School Committee meeting.  Id.

Cass filed this action in Massachusetts Superior Court on May 20, 2021.  See Docket No. 1-2.  Cass named as defendants Robert Irving, former Wayland Chief of Police; Patrick Swanick, Wayland Chief of Police; Shane Bowles, a Wayland Police Officer; Leisha Simon, an employee of the Wayland Public Schools; Reid Lyons, an employee of the Wayland Public Schools; and Ellen Grieco, former Chair of the Wayland School Committee.  Complaint at ¶¶ 2-7.

The Defendants removed the case to this Court on June 9, 2021.  Docket No. 1.  On June 16, 2021, the Defendants filed their motion to dismiss.  Docket No. 5.  Cass filed his opposition on July 12, 2021.[5]  Docket Nos. 12.

---

addition, Cass has not challenged the authenticity of the Settlement Agreement.  Accordingly, this Court properly may consider the Settlement Agreement in deciding this motion.

[5] In his opposition, Cass agreed to withdraw his claims for negligent supervision and negligent infliction of emotional distress.  Docket No. 12 at 16, 18.  The remaining claims are: (1) civil conspiracy, (2) defamation, (3) invasion of privacy, (4) malicious prosecution, (5) abuse of process, (6) intentional infliction of emotional distress, (7) false imprisonment, and (8) violation of 42 U.S.C. § 1983 and G.L. c. 12, § 11H, I.

II. ANALYSIS

A. Standard Of Review

A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Abdisamad, 960 F.3d at 59 (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id. (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the Court must first "strip away and discard the complaint's conclusory legal allegations." In re Montreal, Maine & Atlantic Railway, Ltd., 888 F.3d 1, 6 (1st Cir. 2018) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)). The Court must then "determine whether the remaining facts allow it 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016)).

A document filed by a pro se party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). See also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

B. The Release Is Ambiguous As To The Covered Releasees And, Therefore, Raises Issues Of Fact Not Appropriately Decided On A Motion To Dismiss

The Defendants argue that Cass's claims are barred by the general release contained in the Settlement Agreement. Docket No. 6 at 10-11. A written release is a form of contract and

must be construed in accordance with ordinary contract principles.  See Leblanc v. Friedman, 438 Mass. 592, 596 (2003).  The interpretation of a contractual provision is a question of law for the court.  General Hosp. Corp. v. Esoterix Genetic Labs., LLC, 16 F.4th 304, 308 (1st Cir. Oct. 2021) (citations omitted).  "Contract language is ambiguous where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken."  Id. (citation omitted).  "[T]he parties' intent must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part."  Id. (citation omitted).  "Words that are 'plain and free from ambiguity' must be understood in their 'usual and ordinary sense,' and a contract should be interpreted 'in a reasonable and practical way, consistent with its language, background and purpose.'"  Id.  "[A]bsent ambiguous provisions, we look solely to the language of the contract and do not consider extrinsic evidence."  Id. (citation omitted).  If the contract is ambiguous, however, the court can also then look to extrinsic evidence "in order to give a reasonable construction in light of the intentions of the parties at the time of the formation of the contract."  President and Fellows of Harvard College v. PECO Energy Co., 57 Mass. App. Ct. 888, 896 (2003) (citations omitted).

The Defendants argue that, as employees and officials of the Town of Wayland, they are necessarily covered by the release.  Docket No. 6 at 11.[6]  However, there is some ambiguity regarding which individuals or entities are covered by the release.  The Settlement Agreement

---

[6] In arguing that Cass's claims in this action are barred by the release, the Defendants focus on the breadth of the types of claims encompassed by the release.  See Docket No. 6 at 10-11.  However, the question of what types of claims have been released is separate from which individuals or entities have been released.  See Cram v. Town of Northbridge, 410 Mass. 800, 804 (1991) ("[A] plaintiff who signs a general release form does not discharge all potential joint tortfeasors who are not specifically mentioned in the release unless the plaintiff intended to do so.").

identifies the Releasees as "the Town of Wayland, Wayland Public Schools, Wayland Police Department, Paul Stein, Brad Crozier, Allyson Mizoguchi, Jamie Berger, Massachusetts Interlocal Insurance Association and Cabot Risk Strategies, LLC and *its* respective officials, [. . .] agents, servants, [and] employees . . ." as opposed to "*their* respective officials, [. . .], agents, servants, [and] employees . . ." The use of the singular pronoun "its" as opposed to the collective pronoun "their" could be interpreted to mean that only Cabot Risk Strategies' officials, agents, servants and employees were included in the release.[7] Such ambiguity presents issues of fact not appropriately resolved on a motion to dismiss. Accordingly, I decline to recommend dismissal of the complaint based on the Settlement Agreement.

        C.      <u>Cass's Claims Are Barred By The Doctrine Of Res Judicata</u>

Defendants also argue that Cass's claims are barred by the doctrine of res judicata. Docket No. 6 at 11-13. Federal common law governs the application of claim preclusion where, as here, an earlier federal judgment's preclusive effect is at stake. <u>Maher v. GSI Lumonics, Inc.</u>, 433 F.3d 123, 126 (1st Cir. 2005) (citations omitted). "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were raised or could have been raised in that action." <u>Id.</u> (citation omitted).

In order for claim preclusion to apply, three factors must be present: "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of the parties or privies in the two suits." <u>Id.</u> at 127 (citation omitted). Here, there can be no dispute that the first element is met. The 2017 Action ended via a

---

[7] Defendants argue that the logic behind such an interpretation "is difficult to follow," because "the argument is baseless," Docket No. 6 at 11, but such an interpretation simply follows basic rules of grammar. <u>Cf.</u> <u>Elliott v. S.D. Warren Co.</u>, 134 F.3d 1, 9 (1st Cir. 1998) (plaintiff's suggestion that the third person plural possessive "their" in "their subsidiaries, successors, and related companies" referred to a singular company "offend[ed] abecedarian rules of grammar").

10

stipulation of dismissal with prejudice, which operates as a final adjudication of the merits of the dismissed claims.  See United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998) (citations omitted).

The analysis under the second prong turns on whether the two suits share a "common nucleus of operative facts."  Cordell v. Howard, 879 F. Supp. 2d 145, 153 (D. Mass. 2012) (citations omitted).  In making that determination, a court looks to factors such as "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations."  Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 15 (1st Cir. 2010) (quoting In re Iannochino, 242 F.3d 36, 46 (1st Cir. 2001)).

Here, it is beyond dispute that the majority of the allegations and legal claims in this action are substantially identical to the allegations and claims in the 2017 Action.  In addition, any new allegations also stem from the same series of events as the claims asserted in the 2017 Action.  Cass's claims all arise out of the events leading up to his termination as athletic director in June 2015 and his arrest on October 2015.

Finally, claim preclusion applies if there is privity or "if the new defendant is 'closely related to a defendant from the original action-who was not named in the previous lawsuit . . .'" Silva v. City of New Bedford, 660 F.3d 76, 80 (1st Cir. 2011) (citation omitted).  "Whether a 'close and significant relationship' exists between an original defendant and a defendant only named in a later suit varies with the facts."  Airframe Sys., Inc., 601 F.3d at 17.  For instance, where some alleged conspirators are sued in the first action and the remainder in a second suit based on the same allegations, courts have held that there is a sufficiently close relationship that the later defendants could raise preclusion as a defense.  Id.  Similarly, courts have held that a

11

"sufficiently close relationship existed based on employment and agency to support claim preclusion." Silva, 660 F.3d at 80 (collecting cases). "The common factors in these cases were that 'the [later] claims were or could have been brought against the original defendant in the original suit'[8] and the subsequent suit tried to hold related defendants liable on related claims." Airframe Sys., Inc., 601 F.3d at 18.

Cass was the plaintiff in both actions. The Defendants in this action are officials or employees of the Town of Wayland, who was a defendant in the 2017 Action, and/or are alleged to have been acting in concert with the defendants in the 2017 Action. See Complaint at ¶¶ 84-91 (alleging a conspiracy among all of the Defendants arising from the same conduct alleged in the 2017 Action). Therefore, I find that there is a sufficiently close relationship between the parties in this action and the parties in the 2017 Action. Accordingly, res judicata bars Cass's claims except those pertaining to the January 16, 2020 School committee meeting.

D. Cass's Claims Are Barred By The Statute Of Limitations

Defendants also argue that all of Cass's claims are barred by the applicable statute of limitations. Docket No. 6 at 13-14. All of Cass's claims have a three-year statute of limitations. See M.G.L. c. 260, §§ 2A & 5; Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (Section 1983 claims borrow the forum state's limitation period governing personal injury causes of action, which in Massachusetts is three years). Ordinarily, actions in tort accrue at the time the plaintiff is injured. Taygeta Corp. v. Varian Assocs., Inc., 436 Mass. 217, 229 (2002) (citation omitted). Defamation claims accrue on publication of the allegedly defamatory statement.

---

[8] One allegation could not have been made in the 2017 Action: that the Wayland Police Department engaged in a final act of retaliation and intimidation on January 16, 2020 in connection with a Wayland School Committee meeting. See Complaint at ¶ 80. Defendants' counsel acknowledged as much at oral argument. As discussed below, however, such allegation fails to state a claim against the Defendants.

12

Flynn v. Associated Press, 401 Mass. 776, 780 (1988). Here, the events referenced in the complaint, including the allegedly defamatory remarks by Irving, Bowles and Swanick, date back over five years and are therefore time-barred.[9] See, e.g., Complaint at ¶¶ 36, 46, 93-94.

Cass argues that because he did not receive certain documents related to his claims until February 2018, while discovery was ongoing in the 2017 Action, his claims are not time-barred under the discovery rule. Complaint at ¶ 14; Docket No. 12 at 7-8. Under the discovery rule, "a cause of action. . . does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known of the factual basis for his cause of action." Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 48 (1st Cir. 2004) (quoting Patsos v. First Albany Corp., 433 Mass. 323, 329 (2001)).

Massachusetts, however, does not require that the plaintiff discover each of the elements of his cause of action before the limitations period starts running. Donovan v. Philip Morris USA, Inc., 455 Mass. 215, 228 (2009). Rather, "[i]t is sufficient that the plaintiff has enough information to suggest that he has suffered an injury caused by the defendant's conduct." Wolinetz, 361 F.3d at 48 (citing Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass. Appt Ct. 215 (1990)). Here, Cass was aware of his injury and the cause of his injury when it occurred or shortly thereafter. Indeed, those same injuries were the subject of the 2017 Action. The fact that he may not have been aware of all the facts surrounding such injuries does not toll the statute of limitations. Accordingly, all of Cass's claims, except for those related to the January 16, 2020 School Committee meeting, are subject to dismissal on this basis.

---

[9] The allegations regarding the January 16, 2020 Wayland School Committee meeting appear to be within the limitations period. See Complaint at ¶ 80. However, as discussed below, Cass has failed to state a claim in connection with those allegations.

E.   The Waiver Provisions Of The Massachusetts
     Whistleblower Act Do Not Bar Cass's Claims In This Case

In the 2017 Action, Cass pursued a whistleblower claim under the Massachusetts Whistleblower Act, M.G.L. c. 149, § 185. The Defendants argue that the waiver provision of Section 185(f) bars Cass's state law or common law claims against the Wayland School Officials named in this case. Docket No. 6 at 14-15. That contention is incorrect. The statute only allows for claims against an "employer."[10]  See Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 221 (D. Mass. 2002). The waiver provision of the Massachusetts whistleblower statute therefore only bars claims against the employer, not individual defendants. Id. Indeed, the whistleblower statute was designed "to broaden protection to vulnerable workers, not to force them to jettison legitimate independent claims as a condition to invoking the statute." Id. Accordingly, while Cass's claims are subject to dismissal based on other grounds, they are not subject to dismissal based on the waiver provisions of the Massachusetts whistleblower statute.

F.   Cass Has Not Stated A Claim With Respect To The
     January 16, 2020 Wayland School Committee Meeting

As referenced above, one of Cass's allegations could not have been made in the 2017 Action and appears to be within the limitations period: that on January 16, 2020, the Wayland Police Department engaged in a "final act of intimidation and retaliation." Complaint at ¶ 80. According to Cass, on January 16, 2020, he emailed Wayland Public Schools officials and Chief Swanick that he intended to speak at the School Committee meeting the next day regarding his allegations that the Wayland Public Schools and the Wayland Police Department had covered up

---

[10] It is not clear whether Cass alleges that the Wayland School Committee was his employer. To the extent that it was, then the Whistleblower Act would bar Cass's claims against the Wayland School Committee. This Court need not reach this issue, however, as Cass's claims against the Wayland School Committee are subject to dismissal on other grounds.

14

past incidents of rape and sexual assault by football players.  Id.  Upon Cass's arrival, he encountered Wayland Police Officer Chris Cohen.  Cohen was one of the officers who arrested Cass in 2015.  Id.  "Rather than risk being falsely arrested, Cass left immediately and chose not to speak at the meeting to publicly expose the terrible crimes and coverup."  Id.

It appears that this allegation forms the basis, in part, for Cass's Section 1983 and MCRA claim.  See Complaint at ¶ 154 (Swanick "prevented Cass from exercising his right to freedom of speech by placing an armed WPD officer at the January 16, 2020 WSC meeting to prevent Cass from speaking.").  To the extent that the allegations regarding the January 16 meeting form the basis for his Section 1983 and MCRA claims against Irving and Grieco,[11] Cass has not alleged that either of them placed Officer Cohen at the meeting or prevented Cass from speaking.  See Lehman v. Kornblau, 134 F. Supp. 2d 281, 288 (E.D.N.Y. 2001) (citation omitted) ("Section 1983 imposes liability only upon those who actually cause a deprivation of rights, and thus, the 'personal involvement of [each] defendant in alleged constitutional deprivations' is a necessary element of a Section 1983 claim.").  Accordingly, the claims against Irving and Greco based on the January 2020 meeting are subject to dismissal on this basis alone.

In order to show a First Amendment violation, a plaintiff must show that the defendant intended to inhibit speech protected by the First Amendment, and that the defendant's conduct had a chilling effect on the protected speech that was more than merely "speculative, indirect, or too remote."  Dolan v. Tavares, No. 10-10249-NMG, 2011 WL 10676937, at *6 (D. Mass. May 16, 2011) (citations omitted).  The proper inquiry is "whether the defendant's actions would deter a 'reasonably hardy individual . . .' from exercising his constitutional rights."  Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011) (citing Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d

---

[11] Cass names Irving, Swanick, and Grieco in his Section 1983 and MCRA claims.

1209, 1218 (1st Cir. 1989)). Cass has not alleged that Swanick or any Wayland official or employee prevented him from speaking at the January meeting or that Officer Cohen (or any other officer) threatened him with arrest or in any other way. He has also failed to allege any facts to support an inference that Officer's Cohen's mere presence at the meeting would chill or silence a person of ordinary firmness from engaging in protected First Amendment activities.

While it might be understandable for Cass, given the other allegations in the complaint, to be fearful of attending the meeting, the standard is not a subjective one. Rather, Cass must allege facts that support the reasonably hardy person analysis. He has not done so. Therefore, he has failed to state a First Amendment violation. Similarly, he has not stated sufficient facts to support a MCRA claim. See Swanset Dev. Corp. v. Taunton, 423 Mass. 390, 395 (1996) (To state a claim under the MCRA, the plaintiff must allege facts plausibly suggesting that the exercise of his constitutional rights has been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by "threats, intimidation, or coercion.").

Accordingly, Cass has failed to state a claim under Section 1983 or the MCRA in connection with the January 20, 2020 Wayland School Committee meeting.

III.    RECOMMENDATION

For the foregoing reasons, this Court recommends that Judge Saris grant the Defendants' motion to dismiss.

IV.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed

findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal  
JENNIFER C. BOAL  
United States Magistrate Judge